S05G1101. WALLACE et al. v. BOCK et al.
(620 SE2d 820)

CARLEY, Justice.

On July 29, 1994, John and Patricia Ann Wallace (Appellants) entered into a contract to buy a new house from Bock Homes. The closing was postponed twice because the house was not complete. At the rescheduled closing on October 3, Appellants noted that work still remained to be done. The closing attorney prepared an escrow agreement which provided that $10,000 would be held until October 14, 1994, by which time the escrow agent "must be tendered" a "clear final inspection." All parties signed the agreement, and the sale of the property closed on October 3. Work on the house was not finished by October 14. However, Appellants later learned that the escrow funds were released to Bock Homes without their knowledge or consent. They demanded completion of the work, but it was never finished.

---

[12] Ga. L. 2005 at 234; OCGA § 19-6-15 (e) (4) (D), as amended.

Six years and a day after the closing, Appellants brought suit against Bock Homes and associated entities, alleging breach of the purchase agreement, breach of the escrow agreement, and fraud. The trial court granted summary judgment in favor of Bock Homes and the other defendants and, on appeal, the Court of Appeals affirmed. *Wallace v. Bock*, 271 Ga. App. 833 (611 SE2d 62) (2005). With regard to the escrow agreement, the Court of Appeals agreed with the trial court's conclusion that "Bock Homes had nothing left to perform as to that agreement after it placed into escrow the initial funds that were the subject of the agreement, and thus could not breach it as a matter of law. [Cit.]" (Emphasis omitted.) *Wallace v. Bock*, supra at 835 (1). As for Appellants' claim for breach of the original purchase agreement, the Court of Appeals held that,

> where the parties execute two successive agreements embodying completed negotiations "on the same subject," the doctrine of merger applies, and the second agreement supersedes the first. [Cits.] Here, the purchase agreement specified that only Bock Homes's obligation to complete the house would survive the closing — precisely the subject of the separate escrow agreement executed there. Thus [Appellants'] claim for breach of the purchase agreement based on Bock Homes's failure to complete its work merges into their claim under the escrow agreement. [Cit.] As explained in Division 1, [Appellants'] claim under the escrow agreement fails as a matter of law. As a result, their merged action under the purchase agreement must also fail.

*Wallace v. Bock*, supra at 836 (2).

This Court granted Appellants' petition for a writ of certiorari, in order to address the Court of Appeals' reliance on the doctrine of contractual merger in Division 2 of its opinion.

1. " 'The rational basis for the merger rule is that where parties enter into a final contract all prior negotiations, understandings, and agreements "on the same subject" are merged into the final contract, and are accordingly extinguished.' [Cits.]" (Emphasis omitted.) *Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (2) (359 SE2d 659) (1987) (quoting *Holmes v. Worthey*, 159 Ga. App. 262, 267 (282 SE2d 919) (1981)). Although that is the general rationale, the merger doctrine has application in a variety of contexts. For example, insofar as antecedent oral negotiations, understandings and agreements are concerned, the principle of merger is effectuated by the parol evidence rule. " 'Having reduced their contract to writing, all prior oral negotiations and agreements pertaining to the same subject-matter are merged into the writing and superseded by the writing. [Cit.]' "

*Albany Fed. S. & L. Assn. v. Henderson*, 198 Ga. 116, 143 (6) (31 SE2d 20) (1944). See also OCGA § 13-2-2 (1).

This case, however, concerns the connection between the original sales contract and the subsequent escrow agreement, which are two separate and distinct written contracts entered into by the same parties, but at different times. In that context, applicability of the principle of contractual merger requires a showing of more than a similarity of subject matter. " 'An existing contract is superseded and discharged whenever the parties subsequently enter upon *a valid and inconsistent agreement completely covering the subject-matter* embraced by the original contract . . . .' [Cit.]" (Emphasis supplied.) *Hennessy v. Woodruff*, 210 Ga. 742, 744 (1) (82 SE2d 859) (1954). See also *Arnold v. Arnold*, 227 Ga. App. 152, 154 (1) (489 SE2d 65) (1997). Such a "substituted contract discharges the original duty and [a] breach of the substituted contract by the obligor does not give the obligee a right to enforce the original duty." Restatement, Second, Contracts, § 279 (2), p. 375 (1981). Thus, the principle of merger would extinguish Appellants' right to enforce Bock Homes' contractual obligations under the initial purchase agreement only if the subsequent escrow agreement was both inconsistent with that earlier contract and completely covered the same subject matter.

As the Court of Appeals noted, the subject matter of the purchase agreement included Bock Homes' obligation to complete the construction, as well as to convey title to the real property. See *Holmes v. Worthey*, supra (contractual obligation to build a house is not merged into or extinguished by a subsequent deed conveying title to the real property). The escrow agreement does not cover the entirety of the subject matter addressed in the purchase contract, since it deals only with the construction of the house and not the conveyance of title to the property. Moreover, the escrow agreement is not inconsistent with the purchase agreement in that regard. To the contrary, the escrow agreement reaffirmed the underlying obligation to complete the house in accordance with the purchase contract, and merely set forth an alternative procedure by which Bock Homes was to be paid the balance of the contemplated payment for its satisfaction of that obligation. Thus, the escrow agreement is not a substituted contract which relieved Bock Homes of its responsibility to finish the house. It was simply a modification of the original contract, whereby Bock Homes would no longer be entitled to full payment at the closing on October 3, but would, instead, be authorized to receive it by October 14 if the house was completed by that date. See *Thomas v. Garrett*, 265 Ga. 395, 396 (1) (456 SE2d 573) (1995) (holding that the "modification of a contract may be accomplished by a subsequent mutual agreement of all the parties thereto"). Therefore, the Court of Appeals erred in relying on the merger doctrine to hold that Appellants' claim

for breach of the purchase agreement was merged into and extinguished by the subsequent escrow agreement.

2. The Court of Appeals relied upon the merger doctrine, but the trial court granted summary judgment on the ground that Appellants' claim for breach of the purchase contract was time-barred. It held that

> the closing was conditioned upon issuance of a certificate of occupancy. Therefore, the house was substantially completed as of October 3, 1994. . . . Because the present action was filed more than six years after substantial completion, [Appellants'] claim for breach of the sales contract is barred.

Bock Homes urges that, if the Court of Appeals erred in relying on the merger doctrine, the grant of summary judgment was correct for the reason given by the trial court.

> "[W]hen the question is raised as to whether an action is barred by a statute of limitations, the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result."

*U-Haul Co. of W. Ga. v. Abreu & Robeson, Inc.*, 247 Ga. 565, 566 (277 SE2d 497) (1981). On a contract claim, the statute of limitations begins to run at the time of its alleged breach. *Dolanson Co. v. C & S Nat. Bank*, 242 Ga. 681, 682 (1) (a) (251 SE2d 274) (1978). A suit alleging breach of a construction contract must "be brought within six years after the same become[s] due and payable." OCGA § 9-3-24. See also *Hickey v. Bowden*, 248 Ga. App. 647, 648 (1) (548 SE2d 347) (2001). Thus, Appellants were required to bring suit within six years of the date that Bock Homes' contractual obligation to construct the house in accordance with the purchase agreement became "due and payable."

As the trial court recognized, there is authority for holding that this period of limitations begins "to run on the date of substantial completion, i.e., the date that the certificate of occupancy is issued. [Cits.]" *Feinour v. Ricker Co.*, 255 Ga. App. 651, 653 (1) (566 SE2d 396) (2002). That proposition is certainly applicable in a case where the date of issuance of the certificate of occupancy coincides with the date that the contractor's obligation under the construction contract became "due and payable." See *Colormatch Exteriors v. Hickey*, 275 Ga. 249, 251 (2) (569 SE2d 495) (2002). However, it is only the "general rule" and, as such, is not invariably applicable in all circumstances. *Scully v. 1st Magnolia Homes*, 279 Ga. 336, 338 (1) (614 SE2d 43)

(2005). Accordingly, if Bock Homes' contractual obligation to construct the house became "due and payable" only after the certificate of occupancy was issued, then the latter date controls as to the commencement of the six-year statute of limitations on Appellants' claim that the purchase contract was breached. See *Scully v. 1st Magnolia Homes*, supra; *Colormatch Exteriors v. Hickey*, supra.

Assuming that, pursuant to the original terms, the contract otherwise would have become "due and payable" at the closing on October 3, 1994, "[v]arious circumstances may delay the sale of property by a developer and cause a corresponding delay in the accrual of . . . claims . . . ." *Colormatch Exteriors v. Hickey*, supra at 252 (2). As discussed in Division 1, the contract to purchase the house was modified by the escrow agreement, so that Bock Homes' obligation to complete the dwelling and, consequently, its right to receive the balance of the contemplated consideration was extended until October 14. The escrow agreement expressly provided that, in the event the requirement that Bock Homes tender a "clear final inspection" by October 14 was not met, the escrow agent was authorized to "[d]estroy all closing documents whereupon there will be no further obligation, duty or liability upon [the parties] in regard to this transaction." Therefore, notwithstanding the closing on October 3, the contract, as modified, did not become "due and payable," and the six-year statute of limitations did not begin to run, on that date. Appellants could not bring suit on the purchase contract until it was breached, and Bock Homes was given until October 14 to comply with its contractual obligations. Thus, the alleged breach of the purchase contract did not occur until Bock Homes received final payment at some point after October 3 without providing Appellants the consideration they bargained for. It is undisputed that the escrow agent released the escrow funds less than six years before suit was filed against Bock Homes on the construction contract. Thus, Appellants brought suit less than six years after Bock Homes' alleged breach of the contract. Consequently, the action was commenced timely within the period of limitation prescribed by OCGA § 9-3-24, and the trial court erred in holding otherwise. See *Scully v. 1st Magnolia Homes*, supra; *Colormatch Exteriors v. Hickey*, supra.

3. Division 2 of the Court of Appeals' opinion is disapproved, but Division 1, regarding the claim for breach of the escrow agreement, is unaffected by today's decision.

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 11, 2005.

*Belli, Weil, Grozbean & Davis, Wayne S. Tartline, Douglas J. Davis, Kyle G. A. Wallace,* for appellants.
*Ted Marcus,* for appellees.