**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 28, 2023**

# In the Court of Appeals of Georgia

A23A0212. JORDAN v. KIMPTON HOTEL AND RESTAURANT
GROUP, LLC et al.

McFADDEN, Presiding Judge.

After he was forcibly evicted from a hotel room on April 26, 2018, Darren Jordan brought this contract and tort action against Kimpton Hotel and Restaurant Group, LLC and Six Continents Hotels, Inc., collectively doing business as The Kimpton Brice Savannah (hereinafter, "Kimpton") and operating as part of the IHG group of hotels. The trial court granted summary judgment to Kimpton on all of Jordan's claims, and Jordan appeals.

Jordan bases his various claims on his assertion that he had a right to be in the hotel room at the time of his eviction, either because his reservation extended until April 27 or because he was entitled to a late check-out time on April 26 under the

terms of an IHG hotel customer loyalty program. As detailed below, we find that Jordan's reservation ended on April 26 pursuant to the unambiguous terms of his written reservation agreement with Kimpton, which controls over any prior oral agreement to the contrary. But we find that a genuine issue of material fact exists as to whether Jordan's membership in the loyalty program permitted him to remain in the hotel room past the 11 a.m. check-out time set forth in that agreement. So to the extent Jordan's contract claim asserts a breach of the terms of the loyalty program, we reverse the grant of summary judgment on that claim.

Given our conclusion that there is evidence that Jordan was entitled to occupy the room at the time of his eviction, we also reverse the grant of summary judgment on his claims for a violation of OCGA § 43-21-3.1; invasion of privacy; and false imprisonment. As to each of these claims, Kimpton's argument for summary judgment presumes that Jordan was not entitled to occupy the room. We also reverse the grant of summary judgment on Jordan's claim for punitive damages, which is derivative of these substantive claims.

But we affirm the grant of summary judgment on Jordan's claims for assault and battery based on the allegedly tortious actions of law enforcement officers who

2

responded to a call from the hotel. He has not pointed to evidence that would support the imposition of vicarious liability upon Kimpton for the officers' actions.

We also affirm the grant of summary judgment on Jordan's claim for intentional infliction of emotional distress, because he has not pointed to evidence showing that he experienced the type of distress required for such a claim. And we affirm the grant of summary judgment on Jordan's negligence claim, which he seeks to reverse solely on the ground that it was "wrong for any reason."

Finally, we affirm the grant of summary judgment to Kimpton on Jordan's claim for promissory estoppel because Jordan has abandoned that claim on appeal, having made no argument and cited no authority in support of it.

1. *Facts and procedural history.*

> A trial court may grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*Courtland Hotel v. Salzer*, 330 Ga. App. 264 (767 SE2d 750) (2014).

Much of the evidence in this case comes from Jordan's deposition testimony and his verified complaint. See *Shadder v. Holland*, 350 Ga. App. 191, 191 & n. 1 (828 SE2d 418) (2019) (a plaintiff may point to allegations in a verified complaint to oppose summary judgment where the verification is made on the plaintiff's personal knowledge). To the extent Jordan's testimony and verified allegations conflict, we construe them according to the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), under which a party's self-contradictory testimony is construed against him.

So viewed, the evidence shows that on or around April 16, 2018, Jordan booked the hotel room over the telephone. He told the reservation agent that he wanted to stay at the hotel from April 20 through April 27, and the agent informed Jordan that he had made a reservation for that period. But the written confirmation of Jordan's reservation that was sent by email to Jordan (hereinafter, the "reservation agreement") did not cover a stay through April 27. Instead, it stated that Jordan would check out of the hotel one day earlier, on April 26, 2018 at 11 a.m. It also stated that "[o]nly the reservation as entered into and confirmed by our system will be honored."

When Jordan checked into the hotel on April 20, the front desk employee informed him that his reservation was only through April 26. When Jordan replied

4

that this was a mistake and that he intended to stay until April 27, the front desk employee stated that it would not be a problem to extend the reservation and that he would fix it. From this conversation, Jordan assumed that his reservation had been extended until April 27.

But later during his stay at the hotel, other hotel personnel, including the assistant manager, informed Jordan that his reservation ended on April 26 and that he must check out on that day. Jordan attempted several times to resolve this issue both with hotel personnel and the IHG customer support line, without success. In fact, a customer support representative told Jordan that she could have fixed his reservation problem but was not going to do so because he had been rude to her.

Late in the evening of April 25, a front desk employee again told Jordan that he was scheduled to check out of the hotel the following day. She refused to extend his reservation. Jordan replied that he would not be checking out on that day.

Around 11 a.m. on April 26, the hotel's assistant manager knocked on Jordan's door and told Jordan that he must check out that morning. Jordan replied through the door that he would not check out. Understanding that there were rooms available that evening, Jordan told the assistant manager through the door to charge another night's stay to the credit card he had on file. At some point during this exchange, the assistant

manager threatened to call the police. Jordan then called the IHG customer support line to inform them that the hotel was threatening to call the police to remove him from his room, even though he was a person with elite status in the customer loyalty program.

Shortly after noon, as Jordan was on the phone with the customer support line, law enforcement officers arrived at his room, along with the assistant manager and other hotel personnel. The officers pounded on his door, demanded that he let them in, then surrounded him as hotel employees blocked the doorway. The officers and hotel employees told Jordan that he must leave the room, but Jordan refused. Jordan informed them of his status as an elite member of the customer loyalty program, which permitted a later check-out time.

After Jordan refused to leave, the law enforcement officers grabbed him, twisted his body around, slammed him into the wall, and handcuffed him, injuring Jordan's elbow, wrist, and ankle in the process. The officers also screamed at him, using a derogatory slur referring to his sexual orientation. Hotel personnel who witnessed this event mocked and laughed at Jordan, also using the slur. They began throwing Jordan's clothing and other belongings into his luggage, making fun of those items as they did so.

6

Jordan, who was wearing pyjamas at the time, asked if he could change clothes before leaving the room. The law enforcement officers refused to allow him to change outside of their presence, even though he informed them that he was not wearing underwear beneath his pyjamas. Consequently, Jordan felt compelled to strip nude in front of the officers and the hotel personnel, who continued to taunt and mock him. Jordan felt humiliated and scared by this overall experience.

After leaving the hotel, Jordan sought immediate medical care for his physical injuries. He also experienced psychological distress, such as increased anxiety, that persisted in the months following the incident.

Jordan brought this lawsuit, in which he asserted claims for breach of written and oral contracts, promissory estoppel, violation of OCGA § 43-21-3.1, invasion of privacy, false imprisonment, assault, battery, intentional infliction of emotional distress, and negligence. He also sought punitive damages and costs of litigation. The trial court granted summary judgment to Kimpton on all of Jordan's claims, and Jordan appeals.

2. *Breach of contract.*

Jordan argues that there is evidence that he had a contractual right to be in the room when Kimpton evicted him. In his appellate brief, he argues that there is

"evidence reflecting that the parties had actually agreed to a reservation that should have continued for one additional day[,]" through April 27, 2018. Alternatively, he argues that he was entitled to a later check-out time on April 26 under the terms of Kimpton's customer loyalty program. While we are not persuaded by the first argument, we find that a genuine issue of material fact exists as to the second argument.

(a) *Under the written reservation agreement, Jordan's reservation ended on April 26.*

Although Jordan argues that his hotel reservation ran through April 27, the plain language of his reservation agreement with Kimpton stated otherwise. Among other things, that agreement established that Jordan's hotel reservation ended on April 26. It also expressly stated that Kimpton would honor Jordan's reservation only "as entered into and confirmed by [its] system[.]" Under the parol evidence rule, Jordan may not point to evidence of his earlier conversations with the reservation agent to contradict the terms of this written reservation agreement. See *Wallace v. Brock*, 279 Ga. 744, 745-746 (1) (620 SE2d 820) (2005) ("all prior oral negotiations and agreements pertaining to the same subject-matter are merged into the writing and superseded by the writing") (citations and punctuation omitted).

8

Nevertheless, Jordan argues that he was permitted to occupy the room until April 27, either because the parties made a mutual mistake as to his check-out date in the written reservation agreement or because they subsequently modified that reservation agreement. We disagree.

(i) *Mutual mistake.*

Jordan has not shown the existence of a genuine issue of material fact as to mutual mistake. Mutual mistake is an equitable doctrine that permits the terms of a contract to be reformed under certain circumstances. See OCGA §§ 23-2-21, 23-2-22. "Where reformation is sought on the ground of mutual mistake, it must, of course, be proved to be the mistake of both parties." *CS-Lakeview at Gwinnett v. Simon Property Group*, 283 Ga. 426, 427 (659 SE2d 359) (2008) (citations and punctuation omitted).

Jordan asserts that the reservation agent made a mistake when entering his reservation into the booking system, resulting in an incorrect check-out date. He argues that, because Kimpton did not preserve recordings of his telephone conversation with the reservation agent, he is entitled to a spoliation presumption that those recordings would demonstrate that mistake. See *Anthem Cos. v. Wills*, 305 Ga. 313, 315-316 (2) (823 SE2d 781) (2019) ("The term spoliation is used to refer to the

9

destruction or failure to preserve evidence that is relevant to contemplated or pending litigation. Such conduct may give rise to the rebuttable presumption that the evidence would have been harmful to the spoliator.") (citation and punctuation omitted).

While Jordan also made this argument in his brief opposing summary judgment, he did not file a motion with the trial court for spoliation sanctions or ask the trial court to rule on the spoliation issue before ruling on the motion for summary judgment, and the trial court did not address the issue in the order granting summary judgment.

Spoliation issues are matters for the trial court's wide discretion, see *Anthem Cos.*, 305 Ga. at 315 (2), and so are subject to a different standard than summary judgment rulings.

> Without a ruling by the trial court on [his] claim of spoliation, [Jordan] cannot use the unresolved issue of spoliation to assert that genuine issues of material fact nonetheless exist. And, without the imposition of an evidentiary presumption or some other remedy within the discretion of the trial court, the allegations of spoliation have no impact on the determination of whether genuine issues of material fact preclude summary judgment in this case.

*Dataforensics, LLC v. Boxer Property Mgmt.*, 361 Ga. App. 311, 318-319 (1) (b) (864 SE2d 140) (2021).

(ii) *Modification of the reservation agreement.*

Jordan testified that, when he checked into the hotel, a hotel staff member said he would fix his reservation problem. Jordan argues that this is evidence that Kimpton subsequently modified the reservation agreement to provide for an April 27 check-out date. The trial court, however, held that this evidence was inadmissible hearsay, and Jordan has not challenged that evidentiary ruling on appeal.

Instead, as with his mutual mistake argument, Jordan bases his appellate argument on his assertion that he is entitled to a spoliation presumption. For the same reasons described above, Jordan's "allegations of spoliation have no impact on the determination of whether genuine issues of material fact preclude summary judgment in this case." *Dataforensics, LLC*, 361 Ga. App. at 319 (1) (b).

(b) *A genuine issue of material fact exists as to Jordan's contractual right to a late check-out time on April 26.*

Alternatively, Jordan argues that, under the terms of a separate agreement, the IHG loyalty program, he had a contractual right to remain in the hotel room past the 11 a.m. check-out time reflected in his reservation agreement. See generally *Wallace*, 279 Ga. at 746 (1) (a separate and distinct contract covering a different or broader subject matter does not merge into a subsequent contract between the same parties).

11

Although Kimpton contends that "Jordan's entire case is premised on a purported right to stay . . . until the morning of April 27," rather than a right to a late check-out time, Jordan included this alternative theory in both his complaint and summary judgment opposition brief.

Jordan points to information from an IHG website which shows that, under the terms of the loyalty program, his specific membership level entitled him to a late check-out time of at least 2:00 p.m. Kimpton does not challenge Jordan's assertion that he had contractual rights to the benefits set forth in the loyalty program. Instead, Kimpton argues that the late check-out benefit was "not an absolute right" but was conditioned upon Jordan specifically requesting that benefit. However, no such condition appears in the loyalty program materials from IHG's website that are included in the appellate record in this case. And in support of this argument, Kimpton points only to commentary on a third-party website, which states that a person at Jordan's membership level "can request a late checkout . . ., which is typically 2 p.m." While it may be that the late check-out benefit is conditional, at this stage of the proceedings Kimpton has not demonstrated those conditions as a matter of law.

Consequently, there exists a genuine issue of material fact as to whether Jordan was contractually permitted to remain in his hotel room until 2 p.m. on April 26. Because there is evidence that Kimpton evicted him from that room before 2 p.m. on that date, the trial court erred in granting summary judgment to Kimpton on Jordan's breach of contract claim.[1]

3. *Remaining claims.*

Jordan argues that, because there exists a question of fact as to whether he was entitled to be in his hotel room at the time of his eviction, Kimpton is also not entitled to summary judgment on Jordan's other claims. In his appellate brief, Jordan specifically addresses the following claims: (1) violation of OCGA § 43-21-3.1; (2) invasion of privacy; (3) false imprisonment; (4) negligence; (5) assault; (6) battery; (7) intentional infliction of emotional distress; and (8) punitive damages. Jordan does not address his claim for promissory estoppel or provide any argument or citation to

---

[1] Kimpton does not argue that this case falls under OCGA § 43-21-3.2, which provides a statutory "lockout" remedy when a "guest [has] signed a written statement prominently setting forth in bold type the time period during which the guest may occupy an assigned room, and the agreed-upon time period [has] expired." *Efficiency Lodge v. Neason*, __ Ga. __, __ (1) (__ SE2d __) (Case No. S22G0838, decided June 21, 2023) (citation and punctuation omitted).

13

authority in support of that claim, so we deem that claim abandoned. See Court of Appeals Rule 25 (d) (1).

(a) *Violation of OCGA § 43-21-3.1.*

In his complaint, Jordan asserted a claim under OCGA § 43-21-3.1, which requires the keeper of a hotel to provide notice if it "wishes to terminate the occupancy of a guest for reasons other than those described in subsection (b) of this Code section[.]" OCGA § 43-21-3.1 (a). Under subsection (b), notice is not required in cases of "termination of occupancy for cause, such as failure to pay sums due, failure to abide by rules of occupancy, failure to have or maintain reservations, or other action by a guest." OCGA § 43-21-3.1 (b).

Kimpton argued both below and on appeal that, for two reasons, it was not required to give notice under that statute and so is entitled to summary judgment on this claim: because it did not terminate Jordan's occupancy of the room, given that Jordan's reservation had already ended, and because the Code section permits termination without notice for a guest's "failure to have or maintain reservations[.]" OCGA § 43-21.3.1 (b). These arguments rest on the assumption that Jordan had no contractual right to occupy the room at the time, but as discussed above, a fact question exists as to that issue. So Kimpton has not shown that it is entitled to

14

summary judgment on this claim for the reasons it asserted below and on appeal, and we reverse the grant of summary judgment on this claim.[2]

(b) *Invasion of privacy.*

Jordan claims that he had a reasonable expectation of privacy in his hotel room up to his late check-out time, which Kimpton invaded by entering the room with law enforcement officers, forcing Jordan to disrobe in front of others, and rummaging through his belongings.

> More than 100 years ago, our Supreme Court recognized a private right of action for an invasion of privacy. Since then, the Supreme Court and this [c]ourt have identified four kinds of invasion of privacy for which a right of action exists, and among these is an intrusion upon the seclusion or solitude of a plaintiff or into his private affairs. With regard to this type of invasion of privacy, the Supreme Court has held that the unreasonable intrusion aspect involves a prying or intrusion, which would be offensive or objectionable to a reasonable person[.]

---

[2] As to this claim and the other claims on which we are reversing the grant of summary judgment, we consider only those arguments raised by Kimpton below. While we acknowledge that other arguments may exist that could entitle Kimpton to summary judgment on these claims, we cannot affirm as right for any reason for a reason not raised to the trial court. See *Ga.-Pacific v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013).

15

*Rimert v. Meriwether & Tharp, LLC*, 361 Ga. App. 589, 594 (3) (865 SE2d 199) (2021) (citations, punctuation, and footnote omitted).

As Kimpton points out, recovery for this kind of invasion of privacy requires a showing that Jordan "was subjected to a physical intrusion analogous to a trespass." *Assn. Svcs. v. Smith*, 249 Ga. App. 629, 632 (2) (549 SE2d 454) (2001) (citation and punctuation omitted). Kimpton argues that Jordan was not subjected to such an intrusion because he had no right to occupy the hotel room at the time. Because a genuine issue of material fact exists as to Jordan's right to occupy the hotel room, Kimpton is not entitled to summary judgment on this ground. So we reverse the grant of summary judgment on the claim for invasion of privacy.

(c) *False imprisonment.*

Jordan claims that he was falsely imprisoned when hotel employees blocked him from leaving his hotel room, falsely told law enforcement officers that he was trespassing, and directed the officers to handcuff him, even though the employees knew or had reason to know that his loyalty program membership entitled him to a late check-out time. "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20.

16

Kimpton argues that there was no false imprisonment because Jordan's detention was lawful. In support of this argument, Kimpton contends that the evidence shows Jordan was trespassing in the room and, when he refused to vacate it after being instructed to do so in front of the law enforcement officers, the officers had probable cause to detain him. Again, Kimpton bases its arguments on Jordan not having a right to occupy the room. Because a genuine issue of material fact exists on that point, Kimpton is not entitled to summary judgment for that reason. So we reverse the grant of summary judgment on the false imprisonment claim.

(d) *Assault and battery.*

Jordan claims that Kimpton is vicariously liable for certain actions of the law enforcement officers, which he alleges constituted assault and battery. Kimpton argues, and we agree, that as a matter of law Kimpton had no vicarious liability for any tortious acts by the officers. There is no evidence that the officers were acting within the scope and course of employment with Kimpton at the time, unlike in the cases cited by Jordan, which both involved law enforcement officers whom the defendants had privately employed. See *Ambling Mgmt. Co. v. Miller*, 295 Ga. 758, 765-766 (3) (764 SE2d 127) (2014) (finding a genuine issue of material fact as to vicarious liability based on evidence that the off-duty police officer committed the

17

allegedly tortious acts while acting at the direction of his private employers, the owners of an apartment complex); *Agnes Scott College v. Hartley*, 346 Ga. App. 841, 849 (3) (c) (816 SE2d 689) (2018) (holding that evidence that a law enforcement officer was acting within the scope and course of his private employment with the defendant college when he committed allegedly tortious acts permitted the imposition of vicarious liability upon the college). And Jordan offers no other argument for why Kimpton should be held vicariously liable for the allegedly tortious actions of the law enforcement officers. So we affirm the grant of summary judgment to Kimpton on the claims for assault and battery.

(e) *Intentional infliction of emotional distress.*

Jordan claims that Kimpton employees committed the tort of intentional infliction of emotional distress by forcing their way into his hotel room when he still had a right to occupy it, threatening him, forcing him to disrobe in front of several people, rummaging through his belongings, mocking him, and calling him a disparaging slur. To recover on this claim, Jordan

> must show evidence that: (1) [Kimpton's] conduct was intentional or reckless; (2) [its] conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe. The law intervenes only

18

where the distress inflicted is so severe that no reasonable man could be expected to endure it. The distress must be reasonable and justified under the circumstances, and there is no liability [if Jordan] has suffered exaggerated and unreasonable emotional distress. Whether a claim of severe emotional distress is found is a question for the court.

*Ghodrati v. Stearnes*, 314 Ga. App. 321, 323 (723 SE2d 721) (2012) (citations and punctuation omitted).

Kimpton argues, and we agree, that the acts alleged to have been committed by the hotel employees do not meet this high bar. Setting aside the acts of the law enforcement officers which, as explained above, cannot form a basis for the vicarious liability of Kimpton, the evidence essentially shows that hotel employees mocked and insulted Jordan and treated his belongings roughly when they evicted him from the hotel. Although Jordan asserts that he felt compelled to disrobe in front of others, there is no evidence that the hotel employees required him to change out of the pyjamas he was wearing. But we have held that the type of conduct that would support a claim for intentional infliction of emotional distress "does not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living. Plaintiffs are expected to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind." *Wilcher*

*v. Confederate Packaging*, 287 Ga. App. 451, 454 (2) (651 SE2d 790) (2007) (citation and punctuation omitted). So we affirm the grant of summary judgment to Kimpton on this claim.

(f) *Negligence.*

In his complaint, Jordan alleged that "if Defendants are not liable for breach of contract or promissory estoppel then Defendant Six Continents is liable in negligence for its failure to properly record Plaintiff's reservation resulting in the foreseeable harm of Plaintiff being harassed, humiliated, embarrassed, and physically assaulted and battered." The trial court granted summary judgment on this negligence claim on the grounds that Jordan had not shown the existence of a duty of care with regard to the booking of his reservation and that this claim replicated one of Jordan's claims for breach of contract.

In his summary judgment opposition brief and on appeal, however, Jordan has argued a different negligence claim: he asserts that Kimpton was negligent in the manner in which it evicted him.

> This completely new claim made for the first time in response to the motion for summary judgment does not satisfy even the liberal requirements of the Georgia Civil Practice Act (OCGA § 9-11-1 et seq.) for notice pleading. In the absence of any effort to amend the complaint

to fairly state the new claim prior to summary judgment, the defendants were not given reasonable notice of the claim and had no opportunity to frame a responsive pleading to the claim. Accordingly, at the time the motion for summary judgment was granted, there existed no viable . . . claim [for negligence based on the manner in which Kimpton evicted Jordan].

*Jahannes v. Mitchell*, 220 Ga. App. 102, 104 (1) (1996) (citations and punctuation omitted).

So we affirm the grant of summary judgment to Kimpton on this claim. See *Jahannes*, supra.

(g) *Punitive damages.*

Kimpton argues that it is entitled to summary judgment on Jordan's punitive damages claim because the trial court correctly granted summary judgment on all of the underlying claims. But "there are material questions of fact regarding [some of Jordan's tort] allegations . . ., and evidence of acts by [Kimpton] which could allow a jury to consider a claim for punitive damages." *Tyler v. Lincoln*, 272 Ga. 118, 121 (1) (527 SE2d 180) (2000). So we reverse the grant of summary judgment on the punitive damages claim.

*Judgment affirmed in part and reversed in part. Brown and Land, JJ., concur.*

21

# In the COURT of APPEALS of GEORGIA

## ON MOTION FOR RECONSIDERATION

Kimpton moves for reconsideration of our opinion on two grounds. It argues that we did not properly construe the terms of the loyalty program that Jordan asserts permitted him a late check-out. And it argues that the undisputed evidence shows that it had a statutory right to terminate Jordan's occupancy of his hotel room for unruly and abusive behavior. Neither argument has merit.

1. *Loyalty program.*

Kimpton argues that, under the terms of the loyalty program, Jordan's late check-out benefit was conditional rather than guaranteed. In its motion for reconsideration, it asks us to analyze the record evidence concerning the loyalty program as if the record contained the parties' entire agreement on that topic. But the record is not complete. It contains only select pages from the IHG website that do not appear to reflect the parties' entire agreement.Those web pages use bullet points to show, in a comparison fashion, the types of benefits available to persons at various membership levels. They offer additional information about some of the listed benefits, but not the benefit at issue here: the "Extended 2:00 p. m. Check-Out" available to "Spire Elite" members (Jordan's membership level). Another mention of "Extended Check-Out" is footnoted in the web pages from the IHG website that are part of the appellate record, but those pages do not contain the substance of that footnote. Finally, the web pages in the record state that a person can "[f]ind out all you need to know about IHG Rewards Club in our Terms + Conditions" and provide

a hyperlink to "[r]ead our Terms + Conditions, but they do not actually contain those terms and conditions.

To avoid summary judgment, Jordan only had the burden of pointing to evidence giving rise to a triable issue as to his claim that he was entitled to be in the room at the time of the eviction. He met this burden by pointing to evidence that, viewed in his favor, showed the existence of a program that provided a person at his membership level with an "Extended 2:00 p. m. Check-Out" benefit. Because the record does not contain the specific terms and conditions that apply to that benefit, we cannot as a matter of law construe the benefit to exclude Jordan, as Kimpton would have us do. So this argument provides no ground for reconsidering our opinion.

2. *Statutory right to terminate occupancy.*

Kimpton argues that as a matter of law it had a right under OCGA § 43-21-3.1 to terminate Jordan's occupancy of the hotel room because Jordan had engaged in unruly and abusive conduct. Certainly, Kimpton generally asserted both below and on appeal that Jordan behaved in an unruly and abusive fashion, although we note that the record contains conflicting evidence on that point, specifically Jordan's denial that he shouted at or used vulgar language toward hotel employees. But Kimpton did not argue below that Jordan's alleged unruly and abusive conduct permitted Kimpton to terminate his occupancy of the room under OCGA § 43-21-3.1. As we stated in our opinion, Kimpton's only arguments to the trial court regarding its rights under OCGA § 43-21-3.1 centered on its contention that Jordan did not have a reservation for the day in question. Even if the evidence as to Jordan's conduct was undisputed, we cannot affirm as right for any reason for a reason not raised below. See *Ga.-Pacific v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013). So this argument also provides no ground for reconsidering our opinion.