**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 19, 2025**

# In the Court of Appeals of Georgia

A24A1533. ALL STATES AG PARTS, LLC et al. v. HERZIG et al.

HODGES, Judge.

All States AG Parts, LLC ("ASAP") and Summit Supply Group, LLC ("Summit") appeal from the trial court's denial of their motion for preliminary injunctive relief to enforce restrictive covenants in the employment contracts of two former employees, Austin Herzig and Jeremy Rose. The trial court ruled that Herzig's employment contract had been replaced by a subsequent agreement with no restrictive covenants and that the non-compete clause in Rose's employment contract was overly broad. Although the plaintiffs challenge these rulings on multiple grounds, we find no error and affirm.

The record shows that ASAP supplies replacement parts for agricultural and construction equipment throughout North America. In 2021, ASAP acquired Summit, and the following year it acquired Romac Industrial Parts. Herzig and Rose were employees of Romac. In August 2022, Herzig and Rose signed one-year employment contracts to work for Summit — Herzig in Outside Sales, and Rose as an Inside Sales/Inventory Manager. Their contracts contained identical non-compete and non-solicitation clauses. The non-compete clauses stated:

> Employee agrees that (a) the Company Parties are engaged in the highly competitive business of selling used, rebuilt, and aftermarket parts for all makes and models of tractors, combines, other farm machinery, and construction machinery throughout North America ("*ASAP Business*"); and (b) because of the highly competitive nature of the ASAP Business, use and protection of the Confidential Information is critical to the Company's continued successful operation and business and is an essential part of this Agreement. Accordingly, Employee shall not, during Employee's employment and for a period of one (1) year after termination of Employee's employment for any reason, whether voluntary or involuntary, and whether during, upon or following expiration of the Term . . ., directly or indirectly, alone or in association with any other person, firm, corporation or other business organization be employed by, perform services for, or otherwise associate with in any capacity (including without limitation, as investor, owner, lender, consultant, contractor, joint venturer or partner) with [sic] any person

or entity that is engaged in a business that is the same or substantially similar to or in competition with that of the ASAP Business.

The non-solicitation clauses provided that Herzig and Rose could not "retain, solicit, or attempt to solicit" any Summit or ASAP employee, supplier, service provider, or customer for a period of one year after the termination of their employment.

In May 2023, Summit suspended Rose's employment. However, Rose continued to receive his full salary and benefits through the end of his one-year employment contract term in August 2023.

At the end of Herzig's one-year employment contract term, ASAP gave him an offer letter to continue his position in Outside Sales. The letter, which both Herzig and the ASAP hiring manager signed in September 2023, outlined Herzig's salary, commission, work schedule, benefits, vacation pay, and start date. The letter provided that Herzig's employment was at-will and could be terminated at any time by either party, with or without cause or notice. Finally, the letter stated: "You acknowledge that this letter represents the entire agreement between you and [ASAP] and that no other verbal or written agreements, promises or representations that are not

specifically stated in this offer, are or will be binding upon [ASAP]." The offer letter contained no restrictive covenants.

Herzig resigned his employment with ASAP in January 2024. Around the same time, he began working for ARIS GET, LLC ("ARIS"), a competitor of ASAP, as an independent contractor in outside sales. Rose went to work for ARIS as an independent contractor "to handle warehouse and related work."

Soon thereafter, Summit sent "cease and desist" letters to Herzig and Rose, demanding that they comply with the non-compete and non-solicitation clauses in their August 2022 employment contracts. After failing to receive a satisfactory response, Summit and ASAP filed a verified complaint against Herzig, Rose, and ARIS. The plaintiffs asserted claims against Herzig and Rose for breach of the restrictive covenants in their employment contracts, a claim against Herzig and ARIS for tortious interference with the restrictive covenants in Rose's employment contract, and a claim against all three defendants for tortious interference with ASAP's business relationships.[1]

---

[1] The plaintiffs later filed a motion to add two new defendants, along with a proposed amended complaint. The record contains no ruling on that motion.

The plaintiffs also filed a motion for a temporary restraining order and interlocutory injunction prohibiting the defendants from "engaging in any activities in furtherance of the business or operations of Defendant ARIS or any other competitor" and from "soliciting or attempting to solicit employees, customers, or suppliers/service providers of [ASAP]." Following an evidentiary hearing, the trial court denied the motion. The court ruled that the non-compete clause in Herzig's and Rose's August 2022 employment contracts was "invalid because the scope of prohibited work is overbroad." The court also ruled that Herzig's August 2022 contract "was mutually rescinded and replaced with a new contract of employment which contained no such covenants." The plaintiffs appeal.

"[A]n interlocutory injunction is an extraordinary remedy, and the power to grant it must be prudently and cautiously exercised[.]" (Citation and punctuation omitted.) *SRB Investment Svcs. v. Branch Banking & Trust Co.*, 289 Ga. 1, 5 (3) (709 SE2d 267) (2011).

> [I]n deciding whether to issue an interlocutory injunction, the trial court should consider whether: (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a

substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest. We will not reverse the decision to grant an interlocutory injunction unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion.

(Citations and punctuation omitted.) *Glass v. Faircloth*, 363 Ga. App. 232, 237 (2) (871 SE2d 69) (2022). With these legal principles in mind, we turn to the plaintiffs' arguments.

1. The plaintiffs contend that the trial court erred by ruling that Herzig's 2022 employment contract was superseded by his 2023 offer letter, which contained no restrictive covenants. We disagree.

(a) First, the plaintiffs point out that Herzig's 2022 employment contract was with Summit, but his 2023 offer letter was signed by ASAP. The plaintiffs thus contend that Herzig's agreement with ASAP could not have replaced his contract with Summit "as these are different entities." But as the defendants correctly note, the plaintiffs did not raise this argument in the trial court. An appellate court is for the correction of errors, and we will not consider arguments raised for the first time on appeal. *Wakefield v. Kiser*, 371 Ga. App. 113, 114-115 (1) (899 SE2d 757) (2024).

Even if we could consider this argument, it does not appear at this juncture to have merit. The defendants insist that Summit and ASAP "are not 'separate entities' for the purposes of this case." The defendants point out that ASAP and Summit grouped themselves together in their complaint, seeking the same relief for both companies with no distinction between the two; and despite the language of Herzig's employment agreement, the defendants' opening appellate brief states that "*Herzig* and Rose became employees of *ASAP*" — not Summit — "through company acquisitions." (Emphasis supplied.) The defendants also state that after signing the 2023 agreement, Herzig continued "selling the same parts to the same customers and sitting at the same desk."

In addition to the defendants' observations, we note that although Herzig's 2022 employment contract was signed by Summit, the restrictive covenants in that contract refer to the "Company Parties" — plural — and define the business of those parties as the "ASAP Business," suggesting an enmeshment of corporate interests. Further, the verified complaint alleges that Summit is wholly owned by ASAP and that the two companies have identical headquarters and principal places of business.

Under Georgia law, a corporation may be liable for the acts of a related corporation depending upon "the business structure of each and the level of control one entity has over the other." *Lowery v. Noodle Life*, 363 Ga. App. 1, 3 (869 SE2d 600) (2022). This is a fact-based inquiry. See *Kissun v. Humana, Inc.*, 267 Ga. 419, 422 (479 SE2d 751) (1997) (holding that "the mere fact that one corporation is a subsidiary of another does not alone serve to insulate the parent where the evidence can establish the legal requirements of an actual or apparent agency relationship between the two corporations"). The trial court heard no evidence about the relationship between ASAP and Summit because the plaintiffs did not raise the issue of corporate distinctness, and this Court is not empowered to resolve any factual disputes as to that issue. Under these circumstances, we cannot say that the trial court erred by concluding, at this preliminary stage of the litigation, that Herzig's 2023 employment agreement with ASAP replaced his 2022 contract with Summit for the same job.

(b) The plaintiffs also argue that Herzig's 2022 employment contract is still effective, despite his signing of the 2023 agreement, because the 2022 contract provided for automatic renewal after one year unless either party provided the other with timely notice of its intent not to renew. Neither party provided such notice. The

trial court rejected the plaintiffs' renewal argument, ruling orally at the conclusion of the evidentiary hearing that "notwithstanding whatever may have been in any other document signed between Mr. Herzig and ASAP, both of them are entitled to waive all of the provisions of any other agreement they may have signed and enter into another agreement that supersedes it. That's what this is." In its subsequent written order, the trial court reiterated that the 2022 contract was "mutually rescinded and replaced with a new contract of employment."

"An existing contract is superseded and discharged whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract." (Citation, punctuation, and emphasis omitted.) *Wallace v. Bock*, 279 Ga. 744, 746 (1) (620 SE2d 820) (2005). The plaintiffs argue that no supersession occurred here because Herzig's new employment agreement did not completely cover the subject matter embraced by the original agreement. Specifically, the 2023 offer letter did not include the restrictive covenants that were present in the earlier contract. But the 2023 letter *did* include a merger clause stating that it represented "the entire agreement" between the parties and that "no other verbal or written agreements, promises or representations that are not

9

specifically stated in this offer [would be] binding upon [ASAP]." Thus, by its terms, the 2023 agreement covered the subject matter of Herzig's employment completely, to the exclusion of any other agreement.

The plaintiffs cite *Attaway v. Republic Svcs. of Ga.*, 253 Ga. App. 322 (558 SE2d 846) (2002), to support their argument that no rescission and replacement occurred, but *Attaway* is factually distinguishable. In that case, Attaway sold his waste collection business to Republic Services of Georgia, LLP in 1997, and the parties' asset purchase agreement included a five-year non-compete clause. Id. at 322. Attaway then went to work for Republic. Id. In 1998, he and other Republic managers signed an agreement not to compete during and within 12 months after the termination of their employment. Id. at 323. Attaway left Republic soon after and started a rival business. Id. Republic obtained an injunction against Attaway, who appealed to this Court, arguing that his twelve-month 1998 non-compete agreement superseded the five-year non-compete clause in the 1997 asset purchase agreement. We disagreed, holding that no supersession occurred because "the subject matter of the 1997 sales agreement was the sale of Attaway's waste business and his related obligations as the seller, while the subject matter of the 1998 agreement was Attaway's employment." Id. at 324. Here,

10

by contrast, the subject matter of both agreements was the same — Herzig's employment. *Attaway* does not apply.

In sum, the trial court did not err by ruling that Herzig's 2023 employment agreement superseded his 2022 contract. And because the 2023 agreement contained no restrictive covenants, the plaintiffs failed to show that they were entitled to the preliminary injunctive relief they sought against Herzig.

2. The plaintiffs contend that the trial court erred by concluding that the non-competition clause in Rose's 2022 employment contract was overbroad.[2] Again, we disagree.

(a) The Georgia Restrictive Covenants Act ("GRCA") recognizes that "reasonable restrictive covenants contained in employment and commercial contracts" may serve legitimate business interests. OCGA § 13-8-50. See generally *Motorsports of Conyers v. Burbach*, 317 Ga. 206, 214-216 (2) (c) (ii) (892 SE2d 719) (2023) (discussing the GRCA's "more permissive scheme for construing and enforcing restrictive covenants," compared to prior decisional law). Under the

---

[2] The trial court's overbreadth determination also applied to the identical non-compete provision in Herzig's 2022 employment contract. But in light of our ruling in Division 1 that the trial court did not err by finding that Herzig's 2022 contract was superseded, we address only Rose's 2022 contract here.

GRCA, non-compete covenants are enforceable if they are "reasonable in time, geographic area, and scope of prohibited activities[.]" OCGA § 13-8-53 (a).[3] However, "[a]ny restrictive covenant not in compliance with the provisions of [the GRCA] is unlawful and is void and unenforceable[.]" OCGA § 13-8-53 (d). See also *BB&T Ins. Svcs. v. Renno*, 361 Ga. App. 415, 418 (1) (864 SE2d 608) (2021) ("Restrictive covenants that impose an unreasonable restraint on trade are void as against public policy.").

Here, the trial court found that the scope of prohibited activities in the 2022 contract's non-compete clause was overly broad. Again, that clause provided that Rose could not

> directly or indirectly, alone or in association with any other person, firm, corporation or other business organization be employed by, perform services for, *or otherwise associate with in any capacity* (including without limitation, as investor, owner, lender, consultant, contractor, joint venturer or partner) with [sic] any person that is engaged in a business

---

[3] Such covenants also must be "limited to employees who customarily and regularly solicit customers, customarily and regularly sell products or services, or have defined managerial, key employee, or professional duties." *Kennedy v. Shave Barber Co.*, 348 Ga. App. 298, 302 (1) (a) (822 SE2d 606) (2018) (citing OCGA § 13-8-53 (a) (1), (2), (3), and (4)). The defendants do not contest that Rose meets this description.

that is the same or substantially similar to or in competition with that of the ASAP Business.

(Emphasis supplied.) That is, Rose was prohibited from associating with an ASAP competitor "in any capacity." However, we have held that non-compete clauses that "do not list specific limits on the type of activity, and effectively bar former employees from working in any capacity for competitors" are unreasonable and overbroad. *Burbach v. Motorsports of Conyers*, 363 Ga. App. 188, 191-192 (1) (871 SE2d 63) (2022), vacated and remanded on other grounds by *Motorsports of Conyers v. Burbach*, 317 Ga. at 217-218 (3). See also *AmSpec, LLC v. Calhoun*, 649 F Supp.3d 1345, 1354 (IV) (S.D. Ga. 2022) (finding unenforceable a non-compete clause that, as a practical matter, barred the defendants from "working, consulting, or even volunteering with [the plaintiff's] competitors in any capacity"). Thus, the trial court did not err by finding the scope of the non-compete clause in Rose's 2022 employment contract to be overly broad and therefore unenforceable.

(b) The plaintiffs argue that, even if the non-compete clause was overbroad, the trial court erred by failing to rewrite it. We discern no abuse of discretion.

The GRCA empowers trial courts to "modify" overly broad restrictive covenants and "grant only the relief reasonably necessary to protect [legitimate business interests] and to achieve the original intent of the contracting parties to the extent possible." OCGA § 13-8-54 (b). See also OCGA § 13-8-53 (d) ("a court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties"). "This is known as the Act's 'blue-pencil' provision." *Zammit v. Hobson & Hobson*, 372 Ga. App. 174, 177 (1) (904 SE2d 23) (2024). Whether to modify an otherwise unenforceable restriction lies within the trial court's discretion. Id.

At the hearing on the plaintiffs' motion for injunctive relief, the trial court expressly declined to blue-pencil Rose's non-compete clause, observing that such a revision would require "a much bigger pencil than the legislature envisioned the court's having on restrictive covenants, non-compete agreements." The plaintiffs maintain that the trial court should have accepted their proposed revision of the clause, which struck through the following language:

> Employee shall not, during Employee's employment and for a period of
> one (1) year after termination of Employee's employment for any reason,

14

whether voluntary or involuntary, and whether during, upon or following expiration of the Term . . ., directly or indirectly, alone or in association with any other person, firm, corporation or other business organization be ~~employed by, perform services for, or otherwise associate with in any capacity (including without limitation, as investor, owner, lender, consultant, contractor, joint venturer or partner) with any person or entity that is~~ engaged in a business that is the same or substantially similar to or in competition with that of the ASAP Business.

This revision would have eliminated the sweeping "associate with in any capacity" language, but it still would have forbidden Rose from "engaging in a business" similar to ASAP, without explaining the meaning of that phrase or specifying any particular restricted activities. Under these circumstances, we cannot say that the trial court abused its discretion by declining to rewrite the non-compete clause.

3. The plaintiffs assert that the trial court erred by denying their request for injunctive relief as to the non-solicitation provision in Rose's 2022 employment agreement.[4] As the plaintiffs observe, the defendants did not challenge the enforceability of that provision as to Rose. But the plaintiffs point to no evidence that

---

[4] The plaintiffs' argument also applies to Herzig's 2022 employment agreement. But again, in light of our decision in Division 1 that the trial court did not err by finding that Herzig's 2022 employment contract was superseded, we address this argument only in connection with Rose.

Rose violated it.[5] Accordingly, the plaintiffs failed to demonstrate "a substantial threat that [they] will suffer irreparable injury if the injunction is not granted[.]" (Citation and punctuation omitted.) *Glass*, 363 Ga. App. at 237 (2). See also *Wood v. Wade*, 363 Ga. App. 139, 141 (869 SE2d 111) (2022) (noting that the substantial threat of irreparable injury is the most important factor in deciding whether to grant an interlocutory injunction). Accordingly, we find no abuse of discretion here.

4. The plaintiffs argue that the trial court erred by making final determinations of law at this preliminary stage of the litigation. However, nothing in the trial court's order, which merely denied the plaintiffs' motion for a temporary restraining order and interlocutory injunction, indicates that the court's rulings are not subject to

---

[5] Rose testified that he has "honored" the agreement and has not solicited any of the plaintiffs' employees, servicers, suppliers, or customers, and that he will not do so until the agreement expires. Similarly, the owner of ARIS averred by affidavit that Rose's job duties do not include solicitation of the plaintiffs' employees, servicers, suppliers, or customers. While we express no opinion as to the truthfulness of these statements, we note that the plaintiffs presented no evidence, beyond the allegations of their verified complaint, to counter them. And even if they had presented conflicting evidence, the trial court sat as the trier of fact in this matter. See *Aliera Healthcare v. Anabaptist Healthshare*, 355 Ga. App. 381, 381-382 (1) (844 SE2d 268) (2020) (discussing trial court's role as fact finder in ruling on a motion for interlocutory injunction).

change as the litigation develops. As a result, this claim of error presents nothing for our review.

5. Finally, we address the defendants' contention that this appeal is moot because the restrictive covenants in the 2022 employment agreements have now expired. "When the resolution of a case would be tantamount to the determination of an abstract question not arising upon existing facts or rights, then that case is moot." (Citation and punctuation omitted.) *McAlister v. Clifton*, 313 Ga. 737, 738 (1) (873 SE2d 178) (2022). That is not the situation here. As the plaintiffs point out, the 2022 agreements provided that the period of applicability for the restrictive covenants "will be extended (tolled) for any period of violation by the Employee." In light of this tolling provision, we do not agree that the appeal is moot.

*Judgment affirmed. Doyle, P. J., and Watkins, J., concur.*